# IN THE UNITED STATES DISTRICT COURT
# FOR THE SOUTHERN DISTRICT OF ALABAMA
# SOUTHERN DIVISION

| JESSIE L. BLOUNT, | ) |
|---|---|
| Plaintiff, | ) |
| v. | ) CIVIL ACTION 20-0182-WS-N |
| THE COE MANUFACTURING CO., | ) |
| Defendant. | ) |

## ORDER

This matter is before the Court on its *sua sponte* review of its subject matter jurisdiction. The defendant removed this action on the basis of diversity of citizenship. By previous order, the Court questioned the defendant's demonstration of both complete diversity and the requisite amount in controversy, and it ordered the defendant to file a supplement to its removal papers adequately demonstrating the existence of diversity jurisdiction. (Doc. 7).

The defendant has filed a supplement. (Doc. 12). The supplement adequately asserts the citizenship of the plaintiff. More problematic is the amount in controversy.

The amended complaint, (Doc. 1-1 at 139-45), alleges that the plaintiff's glove got caught in a machine manufactured, designed and/or installed by the defendant. His right ring finger was injured, requiring amputation of the joint at the hospital, apparently immediately after the incident. His damages include: loss of a portion of his finger; pain and suffering; lost wages; mental distress; and medical expenses. The plaintiff seeks compensatory and punitive damages of an unstated amount.

Because the plaintiff did not demand a specific sum, the defendant "must prove by a preponderance of the evidence that that the amount in controversy more likely than not exceeds the jurisdictional requirement." *Roe v. Michelin North America, Inc.*, 613 F.3d 1058, 1061 (11th Cir. 2010) (internal quotes omitted). A removing defendant may assert

that the amount in controversy is facially apparent from the complaint itself, or it may offer evidence beyond the pleading to meet its burden. *Id*.

The Court, citing *Williams v. Best Buy Co.*, 269 F.3d 1316 (11th Cir. 2001), and three sister court rulings within the Eleventh Circuit involving digital amputations,[1] ruled that it is not facially apparent from the complaint itself that the amount in controversy exceeds $75,000. (Doc. 7 at 2-3). The defendant protests that this ruling is incorrect, on the grounds that the complaints in the sister court cases did not demand punitive damages. (Doc. 12 at 8-9). While these cases did not involve punitive damages, each stands for the proposition that digital amputation does not of itself establish the amount in controversy.

The defendant next cites four trial court opinions to suggest that an allegation of hand or foot injury necessarily makes it facially apparent that the amount in controversy exceeds $75,000 even when no punitive damages are sought. (Doc. 12 at 10). None of the cited cases make such a sweeping pronouncement, and at least three of them – including the only one arising within the Eleventh Circuit – involved injuries patently more severe than that of this plaintiff, while the fourth involved more extensive and permanent categories of damages.

The defendant next proposes that a demand for punitive damages automatically makes it facially apparent from the complaint itself that over $75,000 is in controversy. (Doc. 12 at 15). The assertion is flatly incompatible with *Williams*. As the Court noted in its prior order, *Williams* ruled that a demand for both compensatory and punitive damages did not make it facially apparent that more than $75,000 was in controversy. 269 F.3d at 1318, 1320.

For its contrary proposition, the defendant relies on several opinions from a particular sister court. *See Smith v. State Farm Fire and Casualty Co.*, 868 F. Supp. 2d

---

[1] *Payne v. J.B. Hunt Transport, Inc.*, 154 F. Supp. 3d 1310, 1313-14 (M.D. Fla. 2016) (left big toe amputation); *Ragle v. Black & Decker (U.S.) Inc.*, 2019 WL 2521847 at *1-2 (M.D. Fla. 2019) (partial middle finger amputation); *Jennings v. Powermatic*, 2013 WL 6017313 at *1-3 (M.D. Fla. 2013) (right index finger amputation).

1333, 1335 (N.D. Ala. 2012) ("The court is willing to go so far as to inform plaintiffs like Smith, who want to pursue claims against diverse parties in a state court seeking unspecified damages of various kinds, such as punitive damages and emotional distress, [that they] must in their complaint formally and expressly disclaim any entitlement to more than $74,999.99, and categorically state that plaintiff will never accept more."); *Jones v. Hartford Fire Insurance Co.*, 2013 WL 550419 at *1 (N.D. Ala. 2013) (*Smith* "made it crystal clear that at the moment a state court plaintiff seeks unspecified damages of various kinds, such as punitive damages, or emotional distress, or attorney's fees, the claim automatically is deemed to exceed $75,000 and becomes removable under 28 U.S.C. § 1332"). These cases have "routinely been criticized and rejected," *Watts v. SCI Funeral Services, LLC*, 2020 WL 1310559 at *4 n.5 (N.D. Ala. 2020), including by this Court. *Dunlap v. Cockrell*, 336 F. Supp. 3d 1364, 1368 (S.D. Ala. 2018). The defendant offers, and the Court discerns, no reason to revisit that conclusion.[2]

The defendant initially presented no evidence beyond the state court filings. Those filings included information regarding the plaintiff's worker's compensation claim, which was settled in November 2019. That evidence demonstrates that the plaintiff: was injured in November 2017 and placed on maximum medical improvement, without restrictions, in March 2018; was treated by two physicians and received all necessary medical and surgical treatment; and suffers from no latent injuries resulting from his employment. (Doc. 1-1 at 127-130).

In its supplement, the defendant provides evidence that the employer paid $19,240.50 in medical benefits and $5,239.28 in indemnity payments, for a total of $24,479.78, for which payments the employer claims subrogation. (Doc. 12-13 at 3).

---

[2] The defendant also cites a third opinion by the same judge, this one for the proposition that "[t]he 'legal certainty' that there could not be sufficient punitive damages to take the recovery beyond $75,000 is virtually impossible to demonstrate." *Tucker v. Northbrook Indemnity Co.*, 2013 WL 5961095 at *1 (N.D. Ala. 2013). The legal certainty test, however, applies only when the complaint demands a specific sum. *E.g., Mitchell v. Brown & Williamson Tobacco Corp.*, 294 F.3d 1309, 1315 (11th Cir. 2002). It has no application when, as here (and in *Tucker*), the complaint does not demand a specific dollar amount.

3

The defendant identifies no additional hard damages.[3] Instead, the defendant invites the Court to conclude that the demand for pain and suffering, mental distress, and punitive damages places an additional $50,520.23 in controversy.[4] To make this leap, the defendant relies on results in other cases. (Doc. 12 at 8-12).

In *Federated Mutual Insurance Co. v. McKinnon Motors, LLC*, 329 F.3d 805 (11th Cir. 2003), the insurer brought a declaratory judgment action after its insured demanded policy limits and threatened to sue for bad faith. Policy limits were $50,000. *Id*. at 806. The insurer pointed to Alabama cases in which insureds were awarded over $75,000 on a bad faith claim. The Eleventh Circuit concluded that the insurer had offered "no evidence to show that [the insured's] bad faith claim would satisfy the amount in controversy" and that "mere citation to what has happened in the past does nothing to overcome the indeterminate and speculative nature of [the insurer's] assertion in this case." *Id*. at 809.

In *Lowery v. Alabama Power Co.*, 483 F.3d 1184 (11th Cir. 2007), the removing defendant under the Class Action Fairness Act noted that "plaintiffs in recent mass tort actions in Alabama had received either jury verdicts or settlements for greater than" the jurisdictional amount. *Id*. at 1189. The Court rejected such evidence because it had not come from the plaintiffs, but it went on to "question whether such general evidence is ever of much use in establishing the value of claims in any one particular suit." *Id*. at 1221. At a minimum, there must be "specific detail" about both the removed action and

---

[3] The defendant is silent as to lost wages, and it merely speculates that the plaintiff might conceivably have post-settlement medical expenses, over two years after the injury. (Doc. 12 at 14).

[4] The defendant also invites the Court to consider the value of certain elements of damage the plaintiff has not claimed but which he might claim in the future, at which time they "will be … in 'controversy.'" (Doc. 12 at 9). To establish diversity jurisdiction, however, the amount in controversy must exceed $75,000 "at the time of removal," and post-removal changes in the amount in controversy are irrelevant. *Poore v. American-Amicable Life Insurance Co.*, 218 F.3d 1287, 1291 (11th Cir. 2000), *overruled in part on other grounds, Alvarez v. Uniroyal Tire Co.*, 508 F.3d 639 (11th Cir. 2007).

the cited cases, absent which "we cannot possibly ascertain how similar the current action is to those the defendants cite." *Id.*

The Court has gleaned from *McKinnon Motors* and *Lowery* a pronounced judicial skepticism of results in other cases as a means of satisfying a removing defendant's burden of showing that the amount in controversy exceeds the jurisdictional amount. *E.g., Hill v. Toys "R" Us, Inc.*, 2010 WL 3834532 at *2 (S.D. Ala. 2010).

> At least some of the reasons for this judicial skepticism are readily apparent. First, many factors influence the award of damages, and these factors are ordinarily heavily fact-intensive and thus not reliable indicators of results in other cases – especially those, such as the present case, in which almost no facts are known. Second, reliance on published appellate opinions predictably skews the results because appeals are more likely after a large award than a smaller one. This slant becomes more pronounced when the defendant selectively reports only those published awards favoring its position.

*Beasley v. Fred's Inc.*, 2008 WL 899249 at *2 n.3 (S.D. Ala. 2008).

The defendant does not acknowledge *McKinnon Motors* or *Lowery*. Nor do the sister court opinions on which it relies. Sister courts that do acknowledge these Eleventh Circuit opinions routinely draw from them the same skeptical approach to reliance on awards in other cases.[5]

---

[5] *E.g., Mustafa v. Market Street Mortgage Corp.*, 840 F. Supp. 2d 1287, 1292 (M.D. Ala. 2012) (Fuller, J.); *Ponce v. Fontainebleau Resorts, LLC*, 653 F. Supp. 2d 1297, 1304-05 (S.D. Fla. 2009) (Altonaga, J.); *Scottsdale Insurance Co. v. Calhoun Hunting Club and Lounge*, 360 F. Supp. 3d 1262, 1267-68 (M.D. Ala. 2018) (Thompson, J.); *Spurlin v. Cincinnati Insurance Co.*, 2020 WL 759167 at *2 (N.D. Ala. 2020) (Coogler, J.); *Stewart v. State Automobile Mutual Insurance Co.*, 2020 WL 58449 at *3 (N.D. Ala. 2020) (Maze, J.); *Goldsby v. American Family Life Assurance Co.*, 2019 WL 3408910 at *3 (S.D. Fla. 2019) (Ruiz, J.); *Parham v. Osmond*, 2019 WL 3822193 at *3 (M.D. Fla.) (Barber, J.); *Underwood v. The Crossings at Riverview, LLC*, 2018 WL 3868859 at *2 (M.D. Fla. 2018) (Honeywell, J.); *Hardman v. Zale, Inc.*, 2017 WL 759023 at *4 (S.D. Fla. 2017) (Gayles, J.); *Abner v. United States Pipe & Foundry Co.*, 2017 WL 553135 at *7 (N.D. Ala. 2017) (Bowdre, C.J.); *Nelson v. Black & Decker (U.S.), Inc.*, 2015 WL 12259228 at *2 (M.D. Fla. 2015) (Bucklew, J.); *Earl v. Diebold, Inc.*, 2015 WL 789763 at *5 (S.D. Ala. 2015) (DuBose, J.); *Snellgrove v. Goodyear Tire & Rubber Co.*, 2014 WL 235367 at *6 (N.D. Ala. 2014) (Hopkins, J.); *American Academy of General Physicians, Inc. v. LaPlante*, 2013 WL 12248136 *3 (N.D. Ga. 2013) (Jones, J.); *Parks v. Countrywide Home Loans, Inc.*, 2011 WL 6223049 at *3 (M.D. Ala. 2011) (Albritton, J.); *Stewart v. Fairfield Trucking Inc.*, 2009 WL 10674047 at *2 (M.D. Ga. 2009) (Royal, J.); *Eminisor v. LaSalle Bank*

The defendant identifies four Alabama digital amputation cases in which a plaintiff was awarded more than $75,000. (Doc. 12-11). Two of them involved substantially more significant injury than is indicated here – amputation of the dominant thumb and index finger in one case, and two partial amputations plus a crushed hand in the other. A third involved a newborn child, as to whom the defendant admitted its liability. The final case involved partial amputation of an index finger by a meat saw, combined with evidence that the defendant had been sued 25 times previously for the same problem. (*Id*.). The most these cases show is that, if the amputation is sufficiently extensive, or if the injured party is a helpless infant, or if the defendant ignored dozens of previous amputations, then more than $75,000 may be in controversy. Because none of these circumstances are presented here, the defendant's comparative cases are not meaningfully comparable.[6]

In summary, the defendant has failed, in two attempts, to meet its burden of showing by a preponderance of the evidence that the amount in controversy more likely than not exceeds $75,000, exclusive of interest and costs. Accordingly, for the reasons set forth above, this action is **remanded** to the Circuit Court of Clarke County.

DONE and ORDERED this 14th day of April, 2020.

s/ WILLIAM H. STEELE
UNITED STATES DISTRICT JUDGE

---

*National Association*, 2008 WL 11336150 at *2 (M.D. Fla. 2008) (Adams, J.); *Buescher v. Falcon Mezzanine Partners, LP*, 2008 WL 2130155 at *3 (M.D. Ga. 2008) (Lawson, J.).

[6] The defendant also invites the Court to consider results in three New York cases. (Doc. 12 at 11-12). Besides coming from a jurisdiction whose laws regarding liability, damages and evidence have not been shown to parallel those of Alabama, these cases display all the warning signs identified in *Beasley*.